| | | |
|---|---|---|
| **MARILYN RUTH ELLIOTT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 3:13-cv-01397** |
| **v.** | ) | **Judge Sharp** |
| | ) | |
| **NANCY BERRYHILL,**[1] | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Pending before the Court is Plaintiff's *Motion for Judgment on the Administrative Record* (Docket Entry No. 14). The motion has been fully briefed by the parties.

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for disability insurance under Title II and Supplemental Security Income ("SSI"), as provided by the Social Security Act ("the Act"). Upon review of the administrative record as a whole and consideration of the parties' filings, the Court finds that the Commissioner's determination that Plaintiff is not disabled under the Act is supported by substantial evidence in the record as required by 42 U.S.C. § 405(g). Plaintiff's motion will be denied.

## I. INTRODUCTION

Plaintiff, Marilyn Ruth Elliott, filed a Title II application for disability insurance and a Title XVI application for SSI on August 5, 2009, alleging disability as of July 31, 2007, although she later

---

[1]Nancy Berryhill became acting Commissioner for the Social Security Administration on January 23, 2017.

amended her onset date to January 18, 2008.  (Tr. 130, 137, 152).  Plaintiff's claims were denied at

the initial level on February 19, 2010, and on reconsideration on June 21, 2010.  (Tr. 78-83, 88-93).

Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on April

10, 2012.  (Tr. 10, 31).  On April 25, 2102, the ALJ issued a decision finding that Plaintiff was not

disabled.  (Tr. 10-30).  Plaintiff timely filed an appeal with the Appeals Council, which issued a

written notice of denial on October 9, 2013.  (Tr. 1-5).  This civil action was thereafter timely filed,

and the Court has jurisdiction.  42 U.S.C. § 405(g).

## II. ALJ FINDINGS

The ALJ issued an unfavorable decision on April 25, 2102.  (AR p. 10).  Based upon the

record, the ALJ made the following enumerated findings:

1.     The claimant meets the insured status requirements of the Social Security Act through March 31, 2013.

2.     The claimant has not engaged in substantial gainful activity since January 18, 2008, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.     The claimant has the following severe impairments: Back Disorder, Diabetes Mellitus, Hypertension, Borderline Intellectual Functioning, and a Mood Disorder (adjustment disorder versus depressive disorder) (20 CFR 404.1520(c) and 416.920(c)).

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), including the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently, sit for six hours, and stand and/or walk for six hours, each with normal breaks in the course of an eight-hour day, except as follows: She is limited to jobs requiring no more than occasional climbing of ladders, ropes or scaffolds; no more than

frequent posturals of climbing, balancing, stooping, crouching, kneeling, or crawling (as to stairs and ramps); with no concentrated exposure to vibrations. From a mental perspective, she is further limited to unskilled jobs involving no more than simple tasks and instructions.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on May 31, 1962 and was 45 years old, which is defined as a younger individual (age 18-49), on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.      The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the regional and national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from January 18, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(AR pp. 12-25).

## III.  REVIEW OF THE RECORD

The following summary of the medical record is taken from the ALJ's decision:

What follows is a synopsis of each of the treatment exhibits in an approximate chronological sequence. This is generally done on an exhibit-by-exhibit basis, bearing in mind there may be some chronological overlap as between a portion of the exhibits.

As to Exhibit 1-F, from the Dickson County Health Department, all of the medical records predate the amended alleged onset date, with nothing covering the relevant period. In April of 2006, there is mention of a 3.5 cm lipoma in the middle back near

the spine that was tender to palpation, the onset of which was about four months earlier (p. 9). There is also mention of a hypothyroid condition, but this well predated the point of the alleged onset as well (p. 2-7).

Exhibit 2-F, from Dickson Medical Associates, covering the period between November of 2006 and May of 2007, also predates the amended alleged onset date. On the former date, the claimant presented with coughing symptoms and was diagnosed with sinusitis and bronchitis (p. 5). On the latter date, the claimant requested an estrogen injection for symptoms of menopause, but also mentioned the back lipoma(s) (pp. 2-3).

Exhibit 7-F, from the Dickson County Health Department, covers an interval between November of 2007 and May of 2010. There is mention of elevated liver enzymes on the former date, and the claimant expressed concern that she acquired an infection because she was exposed to a used needle. The treatment plan called for repeat liver enzyme tests in two weeks, and this was done (pp. 20-21). Separately, blood tests for all forms of Hepatitis infection were negative (p. 39). On the month of amended alleged onset, the claimant also experienced disturbances in eyesight in the setting of markedly elevated blood glucose levels, and was started on metformin; shortly after this, she stated that she felt better (p. 18-19). Still, her blood sugar levels were not well controlled in the beginning, and there was a report of elevated liver enzymes the following month (p. 15). As of June of 2008, most blood sugar readings was in the range of 110-140, though there was a spike at one point (p. 14).

On August 6, 2009, she had a well-woman physical examination which was unremarkable in all respects, except for notations regarding unrelated gynecological concerns (p. 2). On August 19, 2008, the claimant had experienced lower back and flank pain in the setting of a urinary tract infection and possibly dehydration as well; she stated she felt better after drinking cranberry juice and a lot of water (p. 12). By March of 2009, lab work and treatment had mainly been for diabetes, hypothyroidism, and dyslipidemia (p. 8). In June of 2009, the claimant alleged itching in the left ear and was treated for otitis externa (p. 6). In September of 2009, the claimant alleged back and abdominal pain, but also mentioned the back lipoma; this prompted x-rays of the thoracic and lumbar spine, but these reports do not appear in the file (p. 5).

In reviewing the historical lab tests, the only instance of especially elevated liver enzyme levels, from November of 2007, occurred in the setting of undiagnosed diabetes (and therefore, uncontrolled blood sugar levels), together with poor fluid intake (p. 21, 42). Subsequent to that event, these tests returned to a point at or near normal limits, with a rough correlation between elevated enzyme levels and elevated blood glucose and A1c levels (pp. 22-40; see also Ex. 11-F at 13-17). A number of the notes were of a terse and/or routine nature. In all of these things, there was no evidence outline liver dysfunction or damage.

Exhibit 4-F represents the consultative evaluation report of S. Mark Watson, M.D., dated November 19, 2009. In a nutshell, the claimant's main allegation on this occasion related to her back pain, yet on exam she presented a globally normal range of motion with an unremarkable gait and no abnormal neurological findings. The examining physician opined the claimant could only lift and/or carry 10 pounds occasionally, stand and/or walk for at least two hours, and sit for six hours (to this extent, consistent only with sedentary work), but with no other identified restrictions.

Exhibit 10-F represents a consultative evaluation report by Wyatt E. Harper, III, M.A., a licensed senior psychological examiner, dated July 23, 2011. The claimant testified she saw this individual only twice, that she had paid him $100, and that her boyfriend pays this professional sometimes. In any event, the report indicates she was referred there mainly to report on her intellectual functioning although stating that she was also being treated for depression.

The report itself was terse in places, and contained few objective observations, aside from the cognitive test results-

She was oriented to place, person, time, and situation. Eye contact, posture, speech, and motor behavior all appeared unremarkable. She was able to count backward from 100 subtracting 3 until 88, when she began to make errors. She could perform simple arithmetic problems. Short term memory appeared moderately intact. She could recall recent events and knew the U.S. president's name. She was able to make and keep the appointments for testing with the examiner.

She was able to comprehend and answer in writing the questions on the examiner's client questionnaire that reads at the fifth grade level.

During the evaluation, the claimant asserted that she required special education classes before dropping out of school in the 9th grade for unspecified reasons. In an administration of the Wechsler Adult Intelligence Scale-IV Ed. (WAIS-IV), she achieved a full-scale IQ of 68, based on a verbal comprehension index of 66, a perceptual reasoning index of 77, a working memory index of 80, a processing speed index of 71 and a general ability index of 69. In an administration of the Wide Range Achievement Test-Third Ed. (WRAT-3), the claimant achieved standard scores of 81 and 82 in spelling and reading, respectively; but she obtained only a 68 in math. Her activities of daily living can be interpreted as fairly robust, because although the claimant asserted she spends her day watching television, she also said she is able to cook and care for herself and her mother, drives a motor vehicle, shops as needed, and has a boyfriend. The examiner concluded as follows–

> Ms. Elliott's general cognitive ability is in the extremely low range as estimated by the WAIS-IV. She does not learn verbal tasks nor non-verbal tasks well. Her general verbal comprehension abilities are

in the extremely low range.  Perceptual reasoning abilities are in the borderline range.  She will not be able to comprehend and follow verbal or written directions well.  Her ability to sustain attention, concentrate, and exert mental control is in the low average range.  She will have difficulty maintaining extended performance in a work setting. . . . Ms. Elliott will have difficulty dealing with co-workers, work stresses, and maintaining attention and concentration.

In a separate form, the examiner went on to opine the claimant would only have mild limitations in her ability to understand, remember, and carry out simple instructions and to make judgments on simple work-related decisions, but would have marked limitations in her ability to do these things as to complex instructions.  He further opined in favor of marked limitations in the claimant's ability to interact appropriately with co-workers and the public, moderate limitations in her ability to interact with supervisors, and moderate limitations in her ability to adapt to work-related change.

Exhibit 11-F, from the White Bluff Health Department, covers the interval between April of 2010 and February of 2012.  It shows that on April 16, 2010, the claimant presented for a well woman physical examination, which was unremarkable in all respects; in fact, she reported no symptoms at all (pp. 9-10).  In June of 2010, the claimant reported only groin pain while attempting to lift a heavy trash bag only nine days before the encounter, and was diagnosed with muscular strain (p. 12).

In the earliest available indication of mental illness within the treatment records, the claimant reported being depressed and tearful on January 19, 2011; she also reported a low energy level and disturbances in sleep.  Notes included an impression of "situational stress," suggesting that symptoms could have been acute in onset, rather than because of a long-standing or chronic problem.  She was prescribed Flouxitine (the generic for Prozac) on this occasion.  Of note, this incident came about only a few months prior to the date of the her evaluation with Mr. Hyatt in July of 2011 (see Ex. 10-F). She reported back and leg pain in July of 2011, but the musculoskeletal portion of the exam was unremarkable, her straight leg test was negative, and she had no spinal tenderness (p. 2).  In viewing the balance of the exhibit, one does not see a pattern of such complaints.  The last series of notations were of a routine nature and called for bloodwork and refills (p. 1).

Finally, Exhibits 12-F and 13-F consist of documents styled as medical source statements, but signed by Celia B. Morse, A.P.N.  Counsel, in his brief, asserts that neither opinion is supported by the evidence of record (Ex. 14-E).  The undersigned concurs, and finds that the statements are not determinative of this case.  To summarize, both statements, collectively speaking, describe a person with extremely few significant physical or mental limitations.

(AR pp. 17-20).

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court are: (i) whether the decision of the Commissioner is supported by substantial evidence; and (ii) whether the Commissioner made any legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

Substantial evidence has been defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)).

The Court must examine the entire record to determine if the Commissioner's findings are supported by substantial evidence. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir.1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of

credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and final determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

### B. Determining Disability at the Administrative Level

The claimant has the ultimate burden of establishing her entitlement to benefits by proving her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. See 42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(D); 20 CFR §§ 404.1512(a), (c), 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if she applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*,

502 F.3d 532, 539 (6th Cir. 2007); 20 CFR §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment that meets the twelve month durational requirement. 20 CFR §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are of sufficient severity as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 CFR §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra; Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render her presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to her past relevant work. *Combs, supra.* "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [her] limitations." 20 CFR § 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir.1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs, supra.*

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). In order to rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the five-step sequential evaluation process, the claim is not reviewed further. 20 CFR § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

**C. Plaintiff's Assertion of Error**

Plaintiff argues that (1) the ALJ did not include a function-by-function assessment in the RFC assessment as required by SSR 96-8p; (2) the ALJ failed to consider properly whether Plaintiff meets or medically equals Listing 12.05(C) and new and material evidence shows that Plaintiff meets or medically equals Listing 12.05; (3) the ALJ did not properly consider Dr. Harper's opinion; (4) the ALJ failed to obtain vocational expert ("VE") testimony regarding Plaintiff's ability to perform the jobs identified in the decision with the specific RFC assigned in the decision; and (5) the ALJ failed to evaluate properly and assess Plaintiff's credibility as required by SSR 96-7P. (Docket Entry No. 14-1, at 1-2, 6-7). Plaintiff contends that the Commissioner's decision should be reversed and remanded. *Id*. at 6, 12, 16. Alternatively, Plaintiff contends that a sentence six remand is warranted for the ALJ to consider Plaintiff's new and material evidence. Id. at 10.

Sentence four of 42 U.S.C. § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Additionally, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

Sentence six of 42 U.S.C. § 405(g) states as follows:

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the

case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

42 U.S.C. §§ 405(g), 1383(c)(3).  Under a sentence six remand, a "district court does not affirm, modify, or reverse the Secretary's decision; it does not rule in any way as to the correctness of the administrative determination."  *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).  Instead, "the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding."  *Id*.  Plaintiff's assertion of error is addressed below.

*1.  The ALJ did not include a function-by-function assessment in the RFC assessment as required by SSR 96-8p.*

Citing SSR 96-8p, Plaintiff argues that although the "ALJ provided a lengthy RFC in the decision . . . , the ALJ's decision does not include a function-by-function assessment.  Specifically, the ALJ failed to address any limitations regarding pushing and pulling."  (Docket Entry No. 14-1, at 6).

SSR 96-8p provides that the "RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."  SSR 96-8P, 1996 WL 374184, at *3 (S.S.A. July 2, 1996).  The RFC assessment must address an individual's exertional and nonexertional capacities.  *Id*. at *5.  Exertional capacity involves seven

strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling, which must each be considered separately. *Id*. Nonexertional capacity involves "an individual's abilities to perform physical activities such as postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision)," as well as, "it also considers the ability to tolerate various environmental factors (e.g., tolerance of temperature extremes)." *Id*. at *6. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id*. at *7. In assessing the RFC, the ALJ "must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis" and "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*.

The Sixth Circuit has stated that while "SSR 96-8p requires a 'function-by-function evaluation' to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (citing *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153 (table), No. 00-1995 (3d Cir. Dec. 19, 2000)). Further, "'[a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing,'" as there is a difference "'between what an ALJ must consider and what an ALJ must discuss in a written opinion.'" *Id*. at 547-48 (internal citation omitted). "Significantly, SSR 96-8p states that the ALJ must consider each function separately; it does not state that the ALJ must discuss each function separately in the narrative of the decision." *Hernandez v. Colvin*, No. 3:14-CV-01916, 2016 WL 699200, at *14

(M.D. Tenn. Feb. 2, 2016), report and recommendation adopted, No. 3-14-1916, 2016 WL 695143 (M.D. Tenn. Feb. 22, 2016); *Beason v. Comm'r of Soc. Sec.*, No. 1:13-CV-192, 2014 WL 4063380, at *13 (E.D. Tenn. Aug. 15, 2014) ("SSR 96-8p clearly states that the ALJ must consider each function separately; it does not state that the ALJ must discuss each function separately in the narrative of the AL's decision."). To comply with SSR 96-8p, in specifying a claimant's exertional and nonexertional limitations, "'the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Id*. at 548 (citation omitted); *Picklesimer v. Colvin*, No. 3:13-1457, 2015 WL 5944389, at *12 (M.D. Tenn. Oct. 13, 2015), report and recommendation adopted, No. 3-13-1457, 2015 WL 6690096 (M.D. Tenn. Nov. 2, 2015).

After considering the entire record, the ALJ determined that Plaintiff retained the RFC to perform "light work" as defined in 20 CFR §§ 404.1567(b) and 416.967(b), "including the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently, sit for six hours, and stand and/or walk for six hours, each with normal breaks in the course of an eight-hour day." (AR p. 16). The ALJ limited Plaintiff as follows:

> She is limited to jobs requiring no more than occasional climbing of ladders, ropes or scaffolds; no more than frequent posturals of climbing, balancing, stooping, crouching, kneeling, or crawling (as to stairs and ramps); with no concentrated exposure to vibrations. From a mental perspective, she is further limited to unskilled jobs involving no more than simple tasks and instructions.

(Tr. 16).

Plaintiff does not cite any medical providers who restricted Plaintiff in pushing or pulling, nor does Plaintiff allege that she suffers from a pushing or a pulling restriction. The ALJ provided

a lengthy RFC analysis.  Upon review of the record, the Court concludes that the ALJ's RFC analysis was proper.

*2. The ALJ failed to consider properly whether Plaintiff meets or medically equals Listing 12.05(C), or alternatively, on remand the ALJ should consider the new and material evidence that shows that Plaintiff meets or medically equals Listing 12.05.*

Plaintiff contends that she meets or equals Listing 12.05(C) and alternatively argues that the Court should remand this action for the ALJ to consider her education records.  (Docket Entry No. 14-1, at 6-7).  At the time of the ALJ's decision, Listing 12.05 stated in relevant part:

Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

. . .

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05 (2012).  Thus, Listing 12.05(C) has two parts:

The first part, which is referred to as the "diagnostic definition," requires: 1) significantly sub-average general intellectual functioning; 2) deficits in adaptive functioning; and 3) onset before age twenty-two. . . .  The second part, which is referred to as the "severity criteria" of subsection C, requires: 1) a valid verbal, performance, or full scale IQ of 60 through 70; and 2) a physical or other mental impairment imposing an additional and significant work-related limitation or function.

*Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (citations omitted).

However, "even when a finding of borderline intellectual functioning exists, that finding alone does not raise a substantial question as to whether the claimant meets the diagnostic definition of Listing

12.05." *Id.* at 434 (citing *Sheeks v. Comm'r of Soc. Sec. Admin.*, 544 F. App'x 639, 641-42 (6th Cir. 2013)).

The ALJ found the following:

Before closing out this portion of the decision, a word is in order regarding the diagnosis of mild mental retardation as contained in the mental evaluation at Ex. 10-F. Regardless of the words that may have been used by the psychological examiner in describing the claimant's level of cognitive functioning, the term "mental retardation" has a very specific legal definition in the Social Security regulations, especially as found within the Listing of Impairments. Listing §12.05 defines mental retardation as significantly subaverage general intellectual functioning *with deficits in adaptive functioning initially manifested during the developmental period, i.e.*, the evidence demonstrates the onset of the impairment before age 22 (emphasis added). It appears, especially in view of the full-scale IQ score of 68, that counsel may have been attempting to steer the claimant's theory of the case towards paragraph C of listing 12.05 (that is to say, a valid verbal, performance or full-scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function).

If, then, the claimant has a full-scale IQ score of 68, which we will assume to be valid, together with the presence of one or more severe physical impairments-and the undersigned has so found-does satisfaction of the listing automatically follow? Not necessarily. First, although the record was kept open to allow school records to be added to the file, none were received, and the evidence is unsatisfactory in showing the cognitive impairment came into being prior to age 22. But there's another concern, and it relates to her level of adaptive functioning. Here, the claimant has demonstrated-both in prior statements and in testimony-a robust set of daily activities, as outlined at length above. More fundamentally, this impairment, by its very definition, had to have endured throughout the claimant's adult life, if not also through much of her childhood; yet earnings records show that, for the better part of two *decades*, she was able to maintain employment at levels consistent with substantial gainful activity (Ex. 5-D). As will be noted later in the decision, the vocational expert testified that a portion of the claimant's past relevant work was even at the low end of semi-skilled.

For all of these reasons, it is impossible to make the inferential leap that the claimant meets the criteria for mental retardation, supposing that the results of cognitive testing are valid, supposing her allegation is true that she required special education courses before dropping out of school, and even assuming that school records, if available and added to the record, would have established the presence of the cognitive impairment during childhood. Thus, when borderline intellectual functioning is selected as the severe mental impairment, it serves to recognize the

claimant's reduced level of cognitive functioning, while at the same time noting that her level of adaptive functioning is inconsistent with a finding of mental retardation or mild mental retardation.

(Tr. 15-16).

As to the "severity criteria," the ALJ assumed that Plaintiff's full-scale IQ score of 68 was valid, along with the presence of one or more severe physical impairments. (Tr. 15). However, the record shows that Plaintiff lacks the requisite adaptive functioning deficits to satisfy the diagnostic definition. "Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *West v. Com'r Soc. Sec. Admin.*, 240 F. App'x 692, 698 (6th Cir. 2007); *Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 677 (6th Cir. 2009). Plaintiff does not cite any evidence in the record before the ALJ that shows that she experienced deficiencies in adaptive functioning before or after age twenty-two. *West*, 240 F. App'x zt 698 ("We nevertheless affirm the AL's decision because West introduced absolutely no evidence that he experienced deficiencies at all in 'adaptive functioning,' let alone that any such deficiencies arose during the developmental period."); *Sheeks*, 544 F. App'x at 642 (affirming the ALJ, the Sixth Circuit noted, "Sheeks does not flag any record evidence suggesting he had trouble caring for himself or handling social situations before age twenty-two."); *Nace v. Comm'r of Soc. Sec.*, No. 13-12770, 2015 WL 1511055, at *21 (E.D. Mich. Mar. 25, 2015)("[T]he record does not show adaptive functioning deficits prior to age twenty-two. This is dispositive without regard to the subaverage intelligence requirement.").

The ALJ found that in activities of daily living, Plaintiff had mild restriction. (Tr. 14). The ALJ noted that Plaintiff was able to handle her personal care and hygienic activities; she did not need reminders for taking medicine or grooming; she performed household chores to physical

tolerance; she could drive; she prepared at least simple meals and sometimes more elaborate ones; she shopped regularly for groceries and supplies; and she did not have any difficulties in handling money or finances. (Tr. 14, 279). The ALJ also noted that Plaintiff completed the function report form and answered the questions herself. (Tr. 14, 180-84). In social functioning, Plaintiff had mild difficulties. (Tr. 14). Plaintiff denied difficulty in getting along with others and denied that she was ever fired from employment for interpersonal reasons. (Tr. 14). With regard to concentration, persistence or pace, the ALJ found that Plaintiff had moderate difficulties, noting that Plaintiff reported that she follows written and spoken instructions "well," and is able to pay attention "for a while," watches television, and drives. (Tr. 14). The ALJ further noted Plaintiff's earnings records showed that Plaintiff was able to maintain employment at levels consistent with substantial gainful activity for "the better part of two decades." (Tr. 16).

Based upon the record, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff did not experience deficiencies in adaptive functioning and therefore cannot meet a Listing under 12.05(C). *See West*, 240 F. App'x at 698 (substantial evidence supported the ALJ's conclusion that the plaintiff did not experience deficiencies in adaptive functioning where the plaintiff held a long-term, full-time position with the city, demonstrating his ability to interact socially on a daily basis and that he was able to drive a garbage truck on a part-time basis, care for his daily needs, pay bills, shop for groceries, interact with friends and families, and engage in numerous other daily activities); *Hayes*, 357 F. App'x at 677 (noting that the plaintiff's adaptive skills were not deficient as the plaintiff cared for herself and her husband; cooked meals, did laundry, shopped; managed her finances; and took public transportation); *Burrell v. Comm'r of Soc.*

*Sec.*, 238 F.3d 419, No. 99-4070, 2000 WL 1827799, at *2 (6th Cir. Dec. 8, 2000) (activities including driving showed a lack of deficit in adaptive functioning).

Further, Plaintiff's claim that she required special education classes before dropping out of school in the ninth grade for unspecified reasons alone is not sufficient to meet a Listing under 12.05(C). *See Eddy v. Comm'r of Soc. Sec.*, 506 F. App'x 508, 510 (6th Cir. 2012) (plaintiff's reliance on evidence that she attended special education classes and quit school after the eighth grade was insufficient to undermine the ALJ's conclusion that she did not meet the regulatory listing for mental retardation because the plaintiff "did not show that her enrollment in special education classes or her failure to continue her schooling were due to her having significantly subaverage general intellectual functioning"); *Hayes*, 357 F. App'x at 677 ("[T]his Court has never held that poor academic performance, in and of itself, is sufficient to warrant a finding of onset of subaverage intellectual functioning before age twenty-two."); *West*, 240 F. App'x at 693-94 (rejecting the Listing argument where plaintiff had a seventh-grade education; read and wrote at a third-grade level; and whose most recent IQ test revealed a full-scale IQ of 66); *Alicea v. Colvin*, No. 2:13-CV-300, 2014 WL 4829467, at *2 (S.D. Ohio Sept. 29, 2014) ("Although Plaintiff asserted that she was in special education classes during grade school and dropped out of the sixth grade . . . . Plaintiff must show more, such as the inability to care for herself or trouble handling social situations."); Parent v. Comm'r of Soc. Sec., No. CIV. A. 07-CV-12111, 2008 WL 1795019, at *8 (E.D. Mich. Apr. 18, 2008) (adopting report and recommendation) (presuming subaverage intelligence from special education classes and a qualifying IQ score, but upholding ALJ's determination that plaintiff did not meet Listing 12.05(C) because of the lack of adaptive functioning deficits); *Nace*, 2015 WL 1511055, at *21.

Alternatively, Plaintiff seeks remand under sentence six, arguing that her education records constitute new and material evidence that supports a finding that Plaintiff meets or medically equals Listing 12.05.  Plaintiff submitted her education records to the Appeals Council, but the Appeals Council declined Plaintiff's request for review of the ALJ's decision.  (Tr. 1-5).  "[W]here the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision."  *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citing *Cotton v. Sullivan*, 2 F.3d 692, 69–96 (6th Cir. 1993)); *see also Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 544 (6th Cir. 2014) ("To the extent Moore attempts to request review of evidence submitted by her treating physician after the ALJ issued its decision . . . that evidence is not part of the administrative record and is not subject to our review.").  However, under sentence six of 42 U.S.C. § 405(g), a district court may "remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding."  *Id.*

"[E]vidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'"  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)).  Evidence is "material" "only if there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'"  *Id.* (citation omitted).  To prove "good cause," a claimant must show "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ."  *Id.*  The Sixth Circuit takes "a harder line on the good cause test."  *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).  To show

good cause, a claimant must give a valid reason for failing to obtain evidence prior to the hearing before the ALJ. *Id.* The claimant bears the burden of proof that a remand is appropriate. *Foster*, 279 F.3d at 357.

Plaintiff's education records are from 1971 to 1978, covering school grades fourth through ninth. Plaintiff asserts that she requested these records prior to the ALJ hearing, but because of the school system's delay in processing the request, Plaintiff did not receive the records until after the ALJ's decision. (Docket Entry No. 14-1, at 8). Plaintiff obtained counsel on April 18, 2010. (Tr. 84-86). On August 5, 2010, Plaintiff requested a hearing before the ALJ. (Tr. 94-95). At the April 10, 2012 hearing, Plaintiff's counsel advised that he requested Plaintiff's school records two weeks prior to the hearing, stating that "based on the IQ score from Wyatt Harper, those might be helpful," and that "the psychologist . . . noted she was in special ed classes, so those might be of some value to us." (Tr. 36). Harper's evaluation is dated July 23, 2011. (Tr. 364-66). The ALJ agreed to hold the record open until April 17, 2012 for submission of the records. (Tr. 36). Plaintiff did not request for a longer extension. Plaintiff did not submit the records to the ALJ by April 17, 2012, but did submit them to the Appeals Council. (Tr. 243-53). Although the records were not available at the time of the ALJ hearing, Plaintiff fails to provide good cause for not acquiring this evidence sooner. *Foster*, 279 F.3d at 357 (good cause not shown where claimant "had more than a year and a half to present new evidence to the ALJ"); *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 485 (6th Cir. 2006) (no showing that any of the evidence was unavailable during the course of the administrative proceedings); *Breadfort v. Astrue*, No. 5:10CV-00042-J, 2010 WL 3909263, at *5 (W.D. Ky. Sept. 8, 2010), report and recommendation adopted, No. 5:10CV42-J, 2010 WL 3908569 (W.D. Ky. Oct. 1, 2010) ("Typically, the evidence in question or equivalent evidence could have

been obtained sooner through a timely request or inquiry.  Accordingly, good cause means more than simply that the evidence in question did not previously exist.").

Further, Plaintiff fails to show that the evidence is material as the ALJ assumed, to the benefit of Plaintiff, "that she required special education courses before dropping out of school" and that her school records "would have established the presence of the cognitive impairment during childhood." (Tr. 16).  Plaintiff's school records show consistent poor grades from the fourth grade through the ninth and a Deviation Intelligence Quotient ("DIQ") of 74 in the fourth grade.  (Tr. 245-46).  Here, Plaintiff's school records do not add anything to show "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence," as the ALJ concluded that Plaintiff's level of adaptive functioning was inconsistent with a finding of mental retardation or mild mental retardation.

*3.  The ALJ did not properly consider Dr. Harper's opinion.*

Plaintiff argues that the ALJ's reasons for rejecting Dr. Harper's opinion are unclear. (Docket Entry No. 14-1, at 11).  Specifically, Plaintiff argues:

> The decision contains a chart regarding some of the opinions rendered by Dr. Harper. R. 21-22. The chart is unclear as to the ALJ's reasons for rejecting Dr. Harper's opinion. The ALJ seems to offer her own interpretation of what Dr. Harper meant by his statements and opinion. This was error. If the ALJ was unclear as to the specific limitations assigned by Dr. Harper, she should have recontacted him regarding his opinion. The ALJ erred by attempting to interpret his opinion and this amounted to no more than pure speculation.

> The ALJ states that Dr. Harper opined that "her ability to sustain attention, concentrate, and exert mental control is in the low average range." R. 21. The ALJ then states that "this is actually consistent with the above RFC." It is unclear how this is consistent with the RFC assigned in the decision. Specifically, there is no provision in the RFC involving attention or concentration. The ALJ's chart also notes the limitation assigned by Dr. Harper which involved a statement that she "will have difficulty maintaining extended performance in a work setting." R. 21. The ALJ states that Dr. Harper failed to "quantify the alleged limitation." It seems clear that

Dr. Harper was opining that the claimant would have difficulty with sustained work performance. However, is the ALJ had confusion or concern with Dr. Harper's opinion, she erred by failing to recontact him for further clarification. The ALJ states that Dr. Harper opined that "her ability to sustain attention, concentrate, and exert mental control is in the low average range" and that she "will have difficulty dealing with co-workers, work stresses, and maintaining attention and concentration." The ALJ states that "this is an obvious inconsistency." It is unclear what "obvious inconsistency" the ALJ is referring to in the decision. Dr. Harper opined that "her ability to sustain attention, concentrate, and exert mental control is in the low average range" and that she will have difficulty maintaining attention and concentration. These statements are not inconsistent. In short, the ALJ's reasoning for giving little weight to Dr. Harper's opinions is inconsistent, unclear, and apparently based on her own speculation and interpretation of his opinion.

The ALJ also minimizes and fails to properly state how much weight she gave to the marked limitations assigned by Dr. Harper regarding interaction with the public and coworkers. The RFC does not contain any limitations regarding social interaction. As such, the ALJ erred by failing to provide sufficient explanation for the weight she assigned to the marked limitations assigned by Dr. Harper.

*Id*. at 11-12.

Wyatt Harper, M.A., is a senior psychological examiner, not a doctor. (Tr. 361-374). An ALJ is not required to award any specific degree of deference to a consultative psychological examiner's opinion. *Murphy v. Astrue*, No. 2:11-CV-00114, 2013 WL 829316, at *11 (M.D. Tenn. Mar. 6, 2013), report and recommendation adopted *sub nom. Murphy v. Colvin*, No. 2:11-CV-00114, 2013 WL 4501416 (M.D. Tenn. Aug. 22, 2013). Further, if the record reflects conflicting evidence, the ALJ, and not the district court, is to resolve those conflicts and that resolution must stand if supported by substantial evidence. *Madden v. Comm'n of Soc. Sec.*, 184 F. Supp 2d 700, 706 (S.D. Ohio 2001).

As a senior psychological examiner, Harper is not an "acceptable medical source." *Golden v. Comm'r of Soc. Sec.*, 591 F. App'x 505, 506 (6th Cir. 2015) (citing 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2)). Although not an "acceptable medical source," Harper is classified as an "other

source." 20 C.F.R. §§ 404.1513(d), 416.913(d). SSR 06-03P provides that an ALJ should explain the weight given to "other source" opinions "or otherwise ensure that the discussion of the evidence in the determination or decision allows a . . . reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03P, 2006 WL 2329939, at *6 (S.S.A. Aug. 9, 2006). "Factors to be considered include: the length of the relationship, whether the opinion is consistent with other evidence, if the source presents evidence supporting the opinion, if the source explains the opinion well, and if the source is a specialist." *Ortiz-Fisher v. Colvin*, No. 3:13-CV-1168, 2014 WL 3529783, at *8 (M.D. Tenn. July 15, 2014), report and recommendation approved, No. 3:13-CV-1168, 2015 WL 2374068 (M.D. Tenn. May 18, 2015) (citing SSR 06-03P, 2006 WL 2329939, at *4-5).

The ALJ noted that Plaintiff visited Harper twice and that there was no evidence that Harper was a treating provider. (Tr. 21, 22). The ALJ stated that Harper's opinions were poorly supported and should be given little weight. (Tr. 21, 22). As to Plaintiff's RFC, the ALJ concluded, in part, "[f]rom a mental perspective, [Plaintiff] is further limited to unskilled jobs involving no more than simple tasks and instructions." (Tr. 16). Citing Harper's report, the ALJ noted Plaintiff's "ability to sustain attention, concentrate, and exert mental control is no worse than in the 'low average range,' with no more than a mild limitation in her ability to understand, remember, and carry out simple instructions or to make judgments on simple work- related decisions." (Tr. 14, 19, 361, 365). The ALJ also noted that Plaintiff continued to drive "with common knowledge indicating this activity would surely require significant levels of attention and focus if it is to be accomplished safely." (Tr. 14). The ALJ concluded that, giving at least partial weight to Harper's conclusions, Plaintiff's cognitive disorder "allows for simple and unskilled work." (Tr. 20-21). The ALJ also

stated that Harper failed to explain how Plaintiff's level of concentration and persistence would preclude unskilled work. (Tr. 21). However, Plaintiff's limitation to unskilled jobs involving no more than simple tasks and instructions adequately conveys Plaintiff's ability to sustain attention and concentrate as opined in Harper's report. *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 (6th Cir. 2014) (limitation to simple, routine, and repetitive work adequately conveyed plaintiff's moderate concentrational limitations); *Nichols v. Comm'r of Soc. Sec.*, No. 14-11062, 2015 WL 1300239, at *9 (E.D. Mich. Mar. 23, 2015) ("A number of courts in the district have found the terms 'simple,' 'routine,' and 'unskilled' sufficient to account for the claimant's moderate concentrational limitations.").

The ALJ also stated that Harper failed to quantify the alleged limitation that Plaintiff would "have difficulty maintaining extended performance in a work setting" and did not distinguish between skilled and unskilled work. Further, Plaintiff's long work history contradicts this opinion of Harper. (Tr. 159). In social functioning, Plaintiff had mild difficulties, denied difficulty in getting along with others and denied that she was ever fired from employment for interpersonal reasons. (Tr. 14, 185-86). The ALJ's decision to give minimal weight to Harper's opinion is supported by substantial evidence. As a consultative psychological examiner, the ALJ is not required to award any specific degree of deference to Harper's opinion. *Murphy*, 2013 WL 829316, at *13. Moreover, SSR 06-03P does not require ALJs to address "other source" opinions on a point-by-point basis. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir.2006) (citation omitted) ("An ALJ can consider all the evidence without directly addressing in [the ALJ's] written decision every piece of evidence submitted by a party."). Here, the ALJ considered the opinion evidence in accordance with SSR 06–03P (Tr. 16) and gave it the proper consideration in context with the entire record.

*Ortiz-Fisher v. Colvin*, No. 3:13-CV-1168, 2014 WL 3529783, at *8 (citing *Smith v. Colvin*, 2:13–CV–582, 2014 WL 2197940, at *3–4 (S.D. Ohio May 27, 2014) ("finding that the ALJ complied with SSR 06–03P when it was apparent that the ALJ had considered the source's opinion in the proper context and was aware of the SSR 06–03P requirements").

*4. The ALJ failed to obtain vocational expert testimony regarding Plaintiff's ability to perform the jobs identified in the decision with the specific RFC assigned in the decision.*

Plaintiff argues that the ALJ failed to obtain VE testimony regarding the exact limitations outlined in Plaintiff's RFC. (Docket Entry No. 14-1, at 12). Specifically, Plaintiff asserts that the ALJ's first hypothetical "contained a limitation to no exposure to pulmonary irritants but did not contain a limitation to no concentrated exposure to vibrations and did not contain a limitation to unskilled jobs involving no more than simple tasks and instructions." *Id*. at 13. The ALJ explained:

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.18. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the regional and national economy for an individual with the claimant's age, education, work experience, and residual functional capacity (except that the undersigned inadvertently added a limitation relating to pulmonary irritants, omitted those relating to vibrations, and asked only about physical limitations). The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative light and unskilled occupations such as a hotel/motel housekeeper, with 5,000 jobs in the Tennessee regional economy and 260,000 jobs in the national economy; a bottling line attendant, with 2,000 jobs in the Tennessee regional economy and 102,000 jobs in the national economy; and as a price marker, with 4,000 job s in the Tennessee regional economy and 169,000 jobs in the national economy.
>
> The undersigned stated a moment ago that there was a departure as between the residual functional capacity identified above, and the version that was provided to the vocational expert at the time of the hearing. The need for further vocational testimony is superfluous, however, for three reasons. First, all of the jobs identified by the expert were unskilled jobs, and would therefore be compatible for a person

whose mental limitations allow for only simple and unskilled work. Second, all of the identified jobs would obviously remain available even where, as here, the claimant does not have any pulmonary limitations, and in fact has not alleged any. Third and finally, in reviewing each of the identified occupations, both from the standpoint of the DOT and from common knowledge, there is nothing in each job that requires concentrated exposure to vibrations. As a final point of reference, Social Security Ruling 83-14 tells us that generally speaking, environmental limitations would not significantly affect the potential unskilled light occupational base, which would include, by extension, all of the job s identified by the vocational expert.

(Tr. 25).

All of the jobs identified by the VE included those at the light and unskilled level. Unskilled work is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). Thus, the ALJ's omission of the limitation to unskilled jobs involving no more than simple tasks and instructions is harmless error. The ALJ's inclusion of the limitation to no exposure to pulmonary irritants was also harmless as this hypothetical question was more favorable to Plaintiff. *McVey v. Comm'r of Soc. Sec.*, No. 2:10-CV-231, 2011 WL 7568603, at \*8 (E.D. Tenn. Oct. 18, 2011), report and recommendation adopted, No. 2:10-CV-231, 2012 WL 966484 (E.D. Tenn. Mar. 21, 2012) (citing *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 845 (6th Cir.2005)) ("An error in formulating the hypothetical question can be harmless if the hypothetical is more favorable to the claimant than the ALJ's RFC determination."). Finally, as noted by the ALJ, the vocational expert testified that Plaintiff would be able to perform the requirements of representative light and unskilled occupations such as a hotel/motel housekeeper (DOT listing no. 323.687-014), a bottling line attendant (DOT listing no. 920.687-042), and a price marker (DOT listing no. 209.587-034). (Tr. 25, 64). As to limitations for each of these occupations, the DOT listings provide, "Vibration: Not Present - Activity or condition does not exist." The VE testified that her testimony was consistent with the DOT. (Tr. 68). Thus,

the ALJ's omission of the limitation relating to concentrated exposure to vibrations was harmless. *See Crawford v. Comm'r of Soc. Sec.*, No. 5:11CV1252, 2012 WL 1552781, at *2 (N.D. Ohio Apr. 30, 2012) (failure to include the environmental limitation of avoiding concentrated exposure to fumes, odors, dusts, gases, and poor ventilation, would not have altered the testimony of the vocational expert and the outcome of the proceedings before the ALJ as "[t]he clear intent of [SSR 83-14 and SSR 96-9p] is to eliminate the need to consider environmental limitations within job categories where those limitations would ultimately have no affect on the ability to perform the stated job"); *see also Edwards v. Comm'r of Soc. Sec.*, No. 12-11789, 2012 WL 6962977, at *10 (E.D. Mich. Dec. 17, 2012), report and recommendation adopted, No. 12.-CV-11789-DT, 2013 WL 363018 (E.D. Mich. Jan. 30, 2013) (citation omitted) (the ALJ was not required to obtain vocational expert testimony where plaintiff's nonexertional environmental limitations had little or no effect on the relevant occupational base, explaining that plaintiff's nonexertional limitations dis not erode plaintiff's "ability to perform unskilled, sedentary work because 'few occupations in the unskilled sedentary occupational base require work in environments with extreme cold, extreme heat, wetness, humidity, vibration, or unusual hazards'"); SSR 83-14, 1983 WL 31254, at *5 (S.S.A. 1983) ("The need to avoid environments which contain objects or substances commonly known not to exist in most workplaces would be an obvious example of a restriction which does not significantly affect the medium occupational base.").

5. *The ALJ failed to evaluate properly and assess Plaintiff's credibility as required by SSR 96-7p.*

Plaintiff argues that "the ALJ merely stated that she used the criteria outlined in SSR 96-7p in reaching her decision, rather than specifically stating the weight she gave to the claimant's

statements and the reasons for that weight as is required by SSR 96-7p." (Docket Entry No. 14-1, at 14).

"In making a credibility determination, Social Security Ruling 96-7p provides that the ALJ must consider the record as a whole, including objective medical evidence; the claimant's statements about symptoms; any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant; and any other relevant evidence." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 417 (6th Cir. 2011) (quoting SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996)). "Social Security Ruling 96-7p . . . requires the ALJ explain his credibility determinations in his decision such that it 'must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Rogers*, 486 F.3d at 248. An ALJ "is not required to analyze the relevance of each piece of evidence individually. Instead, the regulations state that the decision must contain only 'the findings of facts and the reasons for the decision.'" *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011) (quoting 20 C.F.R. § 404.953); *see Loral Def. Sys.-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir. 1999) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as" the ALJ's treatment of the evidence as a whole shows that the ALJ "implicitly resolve[d] such conflicts.") (citations and internal quotation marks omitted); *accord Bowman v. Chater*, No. 96–3990, 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997). If an ALJ "simply erred in a factual finding," courts "are not to second-guess," "[a]s long as the ALJ cited substantial, legitimate evidence to support his factual conclusions." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d

709, 714 (6th Cir. 2012). "[H]armless error analysis applies to credibility determinations in the social security disability context." *Id.* An ALJ's credibility determination is entitled to great deference. *Ulman*, 693 F.3d at 714 ("As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess: 'If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion.'") (citation omitted).

The ALJ determined that Plaintiff was credible to some extent, but did not find her fully credible based upon consideration of the entire record. (Tr. 17). The ALJ cited the sparse medical evidence and Plaintiff's daily activities. (Tr. 14, 17). *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997) (citing *Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir.1990)) ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments."). The ALJ also cited the consultative evaluation report of S. Mark Watson, M.D. that reflected a globally normal range of motion with an unremarkable gait and no abnormal neurological findings, the White Bluff Health Department results that were essentially unremarkable, and the findings of Harper and Dr. Petro. (Tr. 18-23). Thus, a fair reading of the entire opinion shows that the ALJ properly assessed Plaintiff's credibility when discussing the various reports.

Accordingly, the ALJ's evaluation of Plaintiff's credibility is supported by substantial evidence in the record. Consequently, the ALJ's decision is conclusive and must be affirmed. *Warner v. Comm. of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

## V. CONCLUSION

In sum, the Court concludes that the findings of the ALJ are supported by substantial evidence on the record as a whole, and are free from legal error. With such support, the ALJ's decision must stand, even if the record also contains substantial evidence that would support the opposite conclusion. *E.g., Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

For all of the reasons stated, the Court will deny Plaintiff's *Motion for Judgment on the Administrative Record.* (Docket Entry No. 14).

An appropriate Order shall be entered.

KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE